IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND SKALSKI, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-2686 (JBS/AMD) |
| v. | |
| ELLIOT EQUIPMENT CO., ET AL., | **OPINION** |
| Defendants. | |

APPEARANCES:

Michael D. Power, Esq.
POWER & ASSOCIATES, PC
One Greentree Centre
Suite 201
Marlton, NJ 08053
    Counsel for Plaintiff

Andrew M. Lusskin, Esq.
BRAFF, HARRIS AND SUKONECK
570 W. Mount Pleasant Avenue
P.O. Box 657
Livingston, NJ 07039-1296
    Counsel for Defendant Elliot Equipment Co.

Michael J. Quinn, Esq.
LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO, PC
Bloom Court
1300 Route 73
Suite 307
Mount Laurel, NJ 08054
    Counsel for Defendant Paccar, Inc.

Christopher Robert Kehrli, Esq.
James Holsey Keale, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD, LLP
Three Gateway Center
12th Floor
Newark, NJ 07102
    Counsel for Defendant Caterpillar, Inc.

**SIMANDLE,** District Judge:

I.  **INTRODUCTION**

This contract matter is before the Court on summary judgment motions filed by Defendant Elliot Equipment Co. ("Elliot") [Docket Item 22], and Defendant Paccar, Inc. ("Paccar") [Docket Item 24].  Defendant Caterpillar Inc. ("Caterpillar") joins both motions.  [Docket Item 23.]

II.  **BACKGROUND**

Plaintiff, Raymond Skalski, is a self-employed trucker. He alleges that a Peterbilt tractor-trailer he purchased from Elliot, a Peterbilt dealer, suffers from a host of deficiencies.[1] Immediately after taking delivery of the truck in March 2007, Plaintiff claims to have noticed problems with the vehicle, which multiplied over time.  The complaint alleges the following issues with the truck, some apparent immediately and others becoming apparent later: an air leak; a defective bumper; a water leak; paint defects; a sleeper ride height defect; a leaking sleeper shock; a vibration concern; problems with the air conditioning; tail light problems; head light problems; transmission problems;

---

[1] Although each party offered a statement of material facts, neither side responded to the other's statement.  The competing statements are like two ships passing in the night. Pursuant to L. Civ. R. 56.1, for the purposes of this motion the Court therefore takes all of the facts in both statements as undisputed to the extent that they are not otherwise contradicted in the briefs and are backed up by any admissible evidence.

brake problems; a problem with the door striker bolt; temperature control problems; problems with the step boards; problems with the electrical systems; rear drive axle problems; unspecified engine problems; and defective wheels.

From March 2007 through November 2007, Plaintiff made at least ten trips to different authorized repair facilities to correct the conditions, with mixed success.  On November 8, 2007, he wrote to Defendant Paccar to demand that they repurchase the vehicle.  (Power Decl., Ex-U.)  From November 2007 through June 2009, he has had the truck repaired another ten times.  The on-going conditions include a vibration and alignment issue, a water leak, metal particles in the oil, abnormal engine noises, and peeling paint.

Both Caterpillar and Paccar, owner of the Peterbilt trademark, provided warranties related to the vehicle.  Caterpillar guaranteed the engine, and Paccar the chassis.  Plaintiff claims that Defendants breached these express warranties, as well as the implied warranties of merchantability and fitness for a particular purpose, based on the failure to repair the problems in a timely manner.  Plaintiff seeks damages for the breaches of the warranties including compensation for the collateral damages of his lost opportunities and attorney's fees.  Plaintiff also seeks to revoke his acceptance of the truck under

3

N.J. Stat. Ann. 12A:2-608.[2]  Finally, Plaintiff claims that Elliot breached the contract of sale by providing the allegedly defective truck, though it is not clear how this claim is distinct from his allegation that Elliot breached the implied warranties of merchantability and fitness.[3]

On April 14, 2008, Plaintiff filed the present suit in state court.  The action was removed to this Court on May 30, 2008, on the basis of diversity jurisdiction.  The argument made by Defendant Elliot on the present motion is that Plaintiff's case

---

[2] N.J. Stat. Ann. 12A:2-608 states:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

[3] Plaintiff's complaint includes only Counts II, IV, and VI, incorporates paragraphs that do not exist, and is vague in parts.  In addition to the ambiguity expressed above with respect to the claim against Elliot, it is not clear how Plaintiff's claim under 12A:2-608 relates to his breach of express warranty claims.

4

requires expert testimony.  Defendant Paccar also argues that expert testimony is required, and adds that the implied warranties and liability for collateral damage were both successfully disclaimed.

**III.  DISCUSSION**

**A.  Standard of Review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

In the event that there is an absence of the kind of evidence needed to prove an essential element of the case "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

5

B.  **Necessity of Expert Testimony**

Generally speaking, under New Jersey law, expert testimony is required when "the matter under consideration is so esoteric or specialized that jurors of common judgment and experience cannot form a valid conclusion." Giantonnio v. Taccard, 676 A.2d 1110, 1115 (N.J. Super. Ct. App. Div. 1996).  Thus, in order to assess whether expert testimony is needed in any particular case, the Court must identify those facts that will be in dispute at trial, and determine whether those facts involve matters so complex and esoteric as to require an expert.

No Defendant identifies the elements of Plaintiff's causes of action, much less connects any particular disputed facts to those causes of action.  Instead, they merely assume that certain facts must be proved while, at least in the case of Elliot, admitting they do not understand the nature of Plaintiff's argument about their responsibility.  The entirety of the application of law to the facts of this case within Defendants' motions consists of the following statements:[4]

The case involves a complex instrumentality, namely a

---

[4] To the extent that Defendants complain about not understanding Plaintiff's case, the proper remedy was to move for more definite pleadings pursuant to Rule 12(e), Fed. R. Civ. P., or seek clarifications through discovery, such as through contention interrogatories under Rule 33(a)(2), Fed. R. Civ. P. The proper remedy is not to wait until the close of discovery to disclose that one does not understand the basis of Plaintiff's action and ask the Court to grant summary judgment based on vague assertions about what might need to be proved at trial.

> truck.  Plaintiff alleges both non-conformities which would appear to relate to the design and/or manufacture of the truck and/or its components as well as inadequate repair.  There is absolutely no manner in which a lay jury can analyze these issues and make a determination without the assistance of an expert. . . . There have been a number of repairs made as the invoices reflect apparently based upon complaints of the plaintiff.  However, it cannot be proven as to whether there was any basis to these complaints, whether or how they can be attributed to any or all of the defendants, and any standard allegedly breached by any of the defendants.  It has not even been made clear by plaintiff as to exactly what the alleged defect is and how any or all of the defendants can be held responsible.

(Def. Elliot's Br. Supp. Summ. J., 5.)  Defendant Paccar's submission is similar:

> Plaintiff's ongoing complaints with regard to the subject vehicle are impossible to categorize to determine whether they arise out of the design and/or manufacture of the vehicle or are a result of a negligent repair.  A lay juror is unable to analyze these issues and make a determination as to causation without the assistance of an expert.

(Def. Paccar's Br. Supp. Summ. J., 3.)  The short briefs offered by all Defendants with respect to expert testimony speak in generalities and do not attempt to apply the expert testimony standard to the origin of any particular defect as it relates to any particular contract provision.[5]

---

[5] Defendant Paccar makes a belated attempt to discuss particular defects in its reply brief, arguing that the handful of problems that still remain as of the present date fall outside the scope of the warranty.  Even if the Court decided to consider these procedurally improper arguments about how to interpret Paccar's warranty, see Anspach ex rel. Anspach v. City of Philadelphia, Dept. of Public Health, 503 F.3d 256, 259 n.1 (3d Cir. 2007) and Kounelis v. Sherrer, 529 F. Supp.2d 503, 527 n. 11

7

The primary argument made by all three Defendants is a broad and general one relating to the origin of the defects and the complexity of the truck. Defendants rely on Gore v. Otis Elevator Co., 762 A.2d 292 (N.J. Super. Ct. App. Div. 2000), which holds that expert testimony was required in a case involving a complex instrumentality. But the mere presence of a complex machine in a case is not a talisman requiring experts to prove all elements of the case. Gore's holding is a good deal more specific than that. Gore involved application of the res ipsa loquitur doctrine in a negligence case involving a plaintiff's injury when elevator doors closed on him. Id. at 301. The question in the case was whether the defect in the doors was created by negligent design or negligent maintenance, and the Court held that without an expert, Plaintiff could not make a showing that negligent maintenance was the cause based on the existence of a malfunction alone. Id. at 302-04. Because an elevator is a complicated piece of machinery, the Court held that the fact that the elevator malfunctioned is not itself evidence that it was improperly maintained, as opposed to defectively designed. Id. at 304. The relevance of the complexity of the elevator is that "res ipsa loquitur is inapplicable where the

---

(D.N.J. 2008), Defendant's arguments assume (without providing any precedent or argument to back up the assumption) that Plaintiff's claim relies on only those problems that have continued to present.

injured party fails to exclude other possible causes of the injury," and where there are many possible elements of design or maintenance that could have contributed to the injury, an expert is necessary to sort them out.  Id. at 302-03.

In Gore, an expert was not required to show that the elevator had malfunctioned.  Id. at 301.  Similarly, in this case, proving the existence of any given defect does not require expert testimony.  The problems' existence can be demonstrated by Plaintiff's testimony about his personal observations as well as the extensive repair records submitted by Plaintiff.  Indeed, the very fact that Plaintiff had to take the vehicle to be repaired on so many occasions may be sufficient to show a breach of the warranty, depending on how the warranty is interpreted (a task which none of the Defendants appear to believe is relevant to their summary judgment motions).

Defendants assume, without any legal argument, that Plaintiff's contract case requires Plaintiff to prove that the defects complained of did not result from negligent workmanship of the authorized repair facilities.  In addition to this unsupported assumption, they offer only the conclusory assertion that it cannot be determined from the evidence of record, without an expert, whether the defects were caused by Plaintiff or the mechanics.  Even if proving Plaintiff's contract claims will require Plaintiff to demonstrate that neither he nor the

9

mechanics caused the problems, it is not the case that Plaintiff would need an expert to assist the jury with fact-finding for each defect. With some of the defects, the timing of the defects is sufficient evidence from which a lay jury can determine their origin. At least some of the defects are alleged to have been present at the time of purchase, which is sufficient proof that neither Plaintiff nor his mechanics caused them. See Christelles v. Nissan Motor Corp., U.S.A., 701 A.2d 1317, 1321 (N.J. Super. Ct. App. Div. 1997) (citing Ventura v. Ford Motor Corp., 433 A.2d 801 (N.J. Super. Ct. App. Div. 1981). With others of the defects, the nature of the defect is sufficient for a lay jury to determine their origin. Unlike in Gore where the only thing known was that some aspect of the elevator's door control failed, Plaintiff here knows the underlying nature of many of the defects, such as a cracked transmission casing or paint being full of dirt. A lay jury is perfectly capable of determining whether a cracked transmission cover discovered within the first week of ownership is more likely than not the fault of someone other than Plaintiff, or that bad maintenance did not cause the paint to be full of dirt.[6]

---

[6] Along these lines, the court in Rosenberg v. Otis Elevator Co., 841 A.2d 99 (N.J. Super. Ct. App. Div. 2004) noted that "[j]udicial evaluation of the need for expert testimony should take account of the complexity of evidence related to instrumentality involved in an accident, rather than simply focusing on whether the instrumentality is complex." Id. at 107.

The Court is not prepared to hold that the origin of each of the problems alleged by Plaintiff can be determined by a lay jury.  It may be that establishing the origin of some of the particular defects alleged by Plaintiff requires expert testimony.  However, the Court is unable to render an opinion on a defect-by-defect basis because none of the three Defendants have taken a position with regard to any specific defects.  Instead, they rely on conclusory statements that the defects as a whole are hard to categorize, without making any attempt to do so or even to isolate particular defects for the sake of argument.  Moreover, even if the Court were inclined to dig through the record without the aid of any specific arguments made by Defendants, the Court is not in a position to make these defect-by-defect determinations based on the meager briefs and summary judgment record before the Court, especially given that Defendants (like Plaintiff) elected not to respond to their adversary's statements of material facts, contrary to the requirement of L. Civ. R. 56.1(a), leaving the Court without a clear impression of what facts will even be at issue at trial.

Defendant Paccar makes one additional argument on the necessity of expert testimony with regard to Plaintiff's claim of substantial impairment entitling him to revoke acceptance, an argument which Defendant Elliot attempts to join in its reply brief.  Defendants claim that <u>Palmucci v. Brunswick Corp.</u>, 710

11

A.2d 1045 (N.J. Super. Ct. App. Div. 1998) held that where a plaintiff did not present expert testimony, the plaintiff could not prove substantial impairment. This is an egregious mischaracterization of Palmucci, which gets the holding of the case almost exactly backwards. In Palmucci, a boat engine purchased by the plaintiff developed "a loud noise" of an unknown cause after only a few hours of use. Id. at 1046. The purchase involved a warranty limiting the seller's obligation to repair of defective parts. Id. at 1047. The seller agreed to fix the problem, but Plaintiff demanded a new engine or a refund. Id. at 1046. The Appellate Division held that "[a]lthough revocation of acceptance is available to the purchaser of a defective product pursuant to N.J.S.A. 12A:2-608, that right does not accrue where, as here, the product is sold with a limitation of remedy." Id. The court also noted that "[e]ven if N.J.S.A. 12A:2-608 were applicable, because defendants never had a chance to try to repair the engine, we cannot infer that the defect, although not identified, was serious and incapable of repair." Id. at 1048. All Plaintiff had shown at trial was that the engine had a loud noise, which was insufficient. Id. Palmucci noted in dicta that plaintiff produced no evidence at all as to substantial impairment, not that expert testimony was required. Id. at 1048. Indeed, Palmucci offers examples of the kinds of evidence the plaintiff could have adduced, none of which involve expert

testimony, and the court cites a treatise which notes that a buyer is not required to present expert evidence in order to satisfy the objective test of substantial impairment.  <u>Id.</u> at 1048-49 (citing Lee R. Russ, <u>Annotation, What Constitutes "Substantial Impairment" Entitling Buyer to Revoke His Acceptance of Goods Under U.C.C. § 2-608(1)</u>, 38 A.L.R. 191 (1996)).

In summary, conclusory statements about expert testimony being needed for possibly relevant, possibly disputed facts is not a sufficient basis upon which to render summary judgment. Summary judgment will therefore be denied with respect to the necessity of expert testimony.

### C.  Disclaimer of Implied Warranties and Collateral Damage

Defendant Paccar makes the additional argument that its warranty agreement disclaimed the implied warranties and disclaimed any liability for collateral damages on behalf of itself and Elliot.[7]  The written warranty provided by Paccar at the time of delivery included such disclaimers, which Plaintiff signed.[8]  (Garson Decl., Ex-E ("Paccar Warranty").)  The Paccar

---

[7] Although Defendant Caterpillar joins Defendant Paccar's motion, Caterpillar does not submit the language of its own warranty.

[8] Defendant Paccar seeks to exclude an affidavit provided by Plaintiff because Paccar argues that it contradicts Plaintiff's deposition testimony.  (<u>See</u> Power Decl., Ex-GG.) However, Defendant fails to cite the portion of deposition testimony that it contradicts, so the Court is unable to evaluate

warranty states in relevant part:

> WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY
>
> Except for the above warranty, Peterbilt Motors Company and the selling Peterbilt Dealer make no other warranties, express or implied, and make NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
>
> It is agreed that Peterbilt Motors Company and the selling Peterbilt Dealer shall not be liable for incidental or consequential damages including, but not limited to: loss of income; damage to vehicle, attachments, trailers and cargo; towing expenses; attorney's fees and any liability you may have in respect to any other person.

(Id.)  The first paragraph is bolded, and the font size of both paragraphs is very small.

### 1. Waiver of implied warranties

The disclaimer of implied warranties is valid under New Jersey law if it is in writing and conspicuous. Gladden v. Cadillac Motor Car Division, General Motors Corp., 416 A.2d 394, 399-400 (N.J. 1980); N.J. Stat. Ann. 12A:2-316. Plaintiff does not dispute the validity or conspicuousness of the disclaimer. Plaintiff's sole argument with respect to the implied warranties aspect of the disclaimer is that he was not presented with the express warranty and disclaimer of implied warranties until he took delivery, which was after he had tendered payment.  It is

---

Defendant's argument.  The Court suspects that Defendant's argument relates to the timing of the issuance of the warranty documents, in which case the argument is moot, for the reasons described below.

not clear what Plaintiff believes this proves, in part because Plaintiff cites no law. Defendant does not respond to this argument.

At one time, the rule in New Jersey appears to have been that some disclaimers of warranties were ineffective if offered after the title has passed to the buyer; such warranties had to be "rescinded" rather than disclaimed. See generally Diepeveen v. Larry Vogt, Inc., 99 A.2d 329 (N.J. Super. Ct. App. Div. 1953). Assuming this to be Plaintiff's argument, however, Diepeveen involved "no allegation that the buyer was aware of the disclaimer or that he had accepted payments under any accompanying express warranties." McConnell v. Caterpillar Tractor Co., 646 F.Supp. 1520, 1527 n.10 (D.N.J. 1986) (distinguishing Diepeveen on this basis). Even if the disclaimer was not part of the purchase contract, this Court sees no reason why a conspicuous written disclaimer signed by Plaintiff in exchange for an express warranty on his purchase should not be binding. Claims against Paccar and Elliot based upon implied warranty, therefore, cannot stand, and partial summary judgment will be granted in favor of these Defendants upon the implied warranty claims.

### 2. Unconscionability of waiver of damages

Plaintiff also argues that the waiver of collateral damages

is unconscionable pursuant to N.J. Stat. Ann. 12A:2-719. Whether a provision of a contract is unconscionable depends on "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." Delta Funding Corp. v. Harris 912 A.2d 104, 111 (N.J. 2006). Procedural unconscionability is "unfairness in the formation of the contract," which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and substantive unconscionability generally involves harsh, unfair, or disproportionately one-sided terms. Yagoda v. Strang Corp., NO. 08-1901 (RMB), 2008 WL 4606306, at *4 (D.N.J. 2008) (quoting Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915 (2002)).

Whether a contract that limits the buyer's remedy so that the exclusive remedy is repair can also limit liability for collateral damages is a close question depending on the facts of the case. The Third Circuit Court of Appeals has held that, predicting the result under New Jersey law, the waiver of collateral damage is not automatically unconscionable because of the failure of the exclusive repair remedy, but that the unconscionability of that provision is examined keeping in mind the remedy available to the party. See generally Chatlos

16

Systems, Inc. v. National Cash Register Corp., 635 F.2d 1081 (3d Cir. 1980). In upholding the waiver of collateral damages on the facts presented to it, the court in Chatlos found that it was important "that the claim is for commercial loss and the adversaries are substantial business concerns." 635 F.2d at 1087. The court found "no great disparity in the parties' bargaining power or sophistication." Id.

Chaltos' view of limitations on consequential damages was explicitly adopted by New Jersey in Kearney & Trecker Corp. v. Master Engraving Co., Inc., 527 A.2d 429 (N.J. 1987). In Kearney, the New Jersey Supreme Court held that "[i]t is only when the circumstances of the transaction, including the seller's breach, cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties that invalidation of the exclusionary clause would be appropriate under the Code." 527 A.2d at 600. Kearney therefore asks the Court to examine whether the seller breached the express warranty in determining whether the limitation clause is unconscionable.

In Carter v. Exxon Co. USA, a Div. of Exxon Corp., 177 F.3d 197 (3d Cir. 1999), the Third Circuit Court of Appeals had the opportunity to apply Kearney to facts similar to this case. In that case, there was a wide disparity in sophistication and bargaining power between the small business-owning plaintiffs and the major corporate defendant, the limitation on liability

17

was buried in an unrelated paragraph and "the critical language limiting Exxon's liability [was] not capitalized or highlighted," and, citing Kearney, "Exxon breached a contractual obligation to make the repair or replacement within a reasonable time."  Id. at 207-209.

The present case falls somewhere between Chatlos and Carter on the issues other than seller's breach.  Unlike Chatlos, Plaintiff in this case is not a "substantial business concern," but rather a self-employed trucker with a ninth grade education.  He is engaging with much more sophisticated entities, using an adhesion contract.  See Rudbart v. North Jersey Dist. Water Supply Comm'n, 605 A.2d 681, 685-86 (N.J. 1992) (explaining adhesion contracts).  The language of the limitation does not appear in a misleading place in the contract as in Carter, but it does appear in tiny, regular case, unbolded font.  See Carter v. Exxon Co. USA, a Div. of Exxon Corp., 177 F.3d 197, 207 (3d Cir. 1999) (noting a lack of capitalization or highlighting as going to procedural fairness).

As to substantive unconscionability, most of the cited cases acknowledge that the terms of these warranties put buyers in a difficult position.  They are forced to allow the warrantor to attempt repair of the defective item, and if the warrantor fails to put the product in working order, the only recourse may be cold comfort when compared to the collateral damages from the

18

required efforts at repair.  In this case, the consequences are even harsher on Plaintiff.  Unlike a large company that loses some marginal business because of a defective purchase, Plaintiff has no income during the period that he is without his truck.  That is why Kearney attaches so much significance to whether and how the seller breached the warranty and its effect on the plaintiff.  Kearney, 527 A.2d at 600.

The main fact distinguishing the present case from Kearney, Chatlos, and Carter, is its procedural posture.  The cited cases are all decisions made by appellate courts, with the benefit of fact-finding on the issue of breach.  Here, the question of whether Defendants breached the express warranties is still disputed, as are at least some of the facts underlying that question.  The critical factor identified by Kearney therefore cannot yet be assessed in order to judge whether this case is more like Chatlos or Carter.  Consequently, the Court must deny summary judgment on this point as it is not the case that Defendant is entitled to judgment as a matter of law as to the validity of the limitation on consequential damages.

**IV. CONCLUSION**

Because Defendants' broad arguments as to the necessity of expert testimony do not apply to all of the problems asserted by Plaintiff, because the Court is unable to make a problem-by-

19

problem determination about what requires expert testimony at this time, and because Defendants have not sufficiently supported either the materiality or disputed nature of the facts they argue will require expert testimony, the motions for summary judgment based on the necessity of expert testimony must be denied.  The Court finds that Plaintiff did waive his right to enforce implied warranties emerging from his purchase of the truck against Defendants Paccar and Elliot, and so the claims against those Defendants based on the implied warranties shall be dismissed.  It is not yet clear whether the limitation on collateral damages in Defendant Paccar's warranty is unconscionable, and summary judgment is denied on that claim.  The accompanying Order shall be entered.


**March 9, 2010**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge